CARLETON L. BRIGGS, SBN 117361
Law Offices of Carleton L. Briggs
3510 Unocal Place, Suite 209
Santa Rosa, CA 95403-0918
Telephone: (707) 523-2251
Facsimile: (707) 523-2253
E-mail: clbriggs@sonic.net

JAMES E. RICE, SBN 213670
Attorney and Counselor at Law
811 East Chicago Street
Caldwell, Idaho 83605
Telephone (208) 453-5122
Facsimile (208) 453-4861
E-mail: jimrice@q.com

Attorneys for Plaintiff
GREENSPRINGS BAPTIST
CHRISTIAN FELLOWSHIP TRUST

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREENSPRINGS BAPTIST CHRISTIAN FELLOWSHIP TRUST, <br><br> Plaintiff, <br><br> v. <br><br> ROBERT MILLER, an individual; BARBARA MILLER, an individual; ANNE MILLER, an individual; JAMES P. CILLEY, an individual; MARK A. SCHMUCK, an individual; and TIMMERMAN, CILLEY & KOHLMANN, LLP, <br><br> Defendants. | CASE NO. <br><br> COMPLAINT FOR DAMAGES FOR MALICIOUS PROSECUTION OF CIVIL ACTION <br><br> DEMAND FOR JURY TRIAL |

Plaintiff alleges as follows:

## INTRODUCTION

1. This is an action for damages for malicious prosecution of a prior civil action in this Court, <u>Miller, et al. v. Greensprings, et al.</u>, Case No. C 07-04776 JL, against the

- 1 -

former plaintiffs and the attorneys who represented the former plaintiffs in that underlying action.  The prior action was (a) commenced by or at the direction of the defendants and was pursued to a legal termination in favor of the plaintiff, who was a defendant in the prior action; (b) brought without probable cause; and (c) initiated with malice.  As a proximate result, plaintiff suffered damages within the jurisdictional limit of this Court.

JURISDICTION

2.  The jurisdiction of this Court is predicated on 28 U.S.C. § 1332, in that the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different States.

VENUE

3.  A substantial part of the events or omissions on which the claim is based occurred in San Francisco County, California.  Venue is therefore proper under 28 U.S.C. § 1391(a)(2).

INTRADISTRICT ASSIGNMENT

4.  This matter should be assigned to the San Francisco Division or the Oakland Division, pursuant to Civil L.R. 3-2(d).

PARTIES

5.  Plaintiff GREENSPRINGS BAPTIST CHRISTIAN FELLOWSHIP TRUST (hereinafter referred to as "GREENSPRINGS") is a charitable religious trust organized and existing under the laws of the State of Oregon with its principal office in Lane County, Oregon.

6.  On information and belief, defendants ROBERT MILLER, BARBARA MILLER and ANNE MILLER (collectively, the "MILLERS") are, and at all times mentioned in this Complaint were, citizens of the State of Hawaii.

7.  On information and belief, defendants JAMES P. CILLEY ("CILLEY") and MARK A. SCHMUCK ("SCHMUCK") are, and at all times mentioned in this Complaint were, citizens of the State of California and attorneys and counselors at law duly licensed

COMPLAINT FOR DAMAGES<br><em>Greensprings v. Miller, et al.</em>

1    to practice, and practicing, in the State of California and admitted to practice before this

2    Court.

3        8.  On information and belief, defendant TIMMERMAN, CILLEY &

4    KOHLMANN, LLP ("TIMMERMAN"), formerly known as Timmerman & Cilley, LLP,

5    is, and at all times mentioned in this Complaint was, a law firm organized and existing as

6    a limited liability partnership under the laws of the State of California, having its

7    principal place of business in San Jose, California, specializing in estate planning, probate

8    and trust administration, and estate and trust litigation.  In May of 2008, defendants

9    CILLEY and SCHMUCK began to refer to the firm in e-mail communications with

10   GREENSPRINGS' counsel as "TIMMERMAN, CILLEY & KOHLMANN, LLP", but

11   continued to use the name "Timmerman & Cilley, LLP" on documents filed with this

12   Court in the prior action.

13       9.  On information and belief, defendant CILLEY is, and at all times mentioned in

14   this Complaint was, a partner in, and at all times mentioned in this Complaint acted with

15   the authorization, permission and consent of, defendant TIMMERMAN; on information

16   and belief, defendant SCHMUCK is, and at all times mentioned in this Complaint was, an

17   employee of, and at all times mentioned in this Complaint acted with the authorization,

18   permission and consent of, defendant TIMMERMAN.

19       10.  Plaintiff is informed and believes and thereon alleges that at all times herein

20   mentioned defendants, and each of them, were the agents, servants, and employees of

21   their co-defendants, and in doing the things hereinafter mentioned were acting in the

22   scope of their authority as such agents, servants, and employees with the permission and

23   consent of their co-defendants.

24   GENERAL ALLEGATIONS

25       11.  On or about August 17, 2007, defendants CILLEY, SCHMUCK and

26   TIMMERMAN, as counsel of record for defendants BARBARA MILLER, as guardian

27   of Molly Miller, and ANNE MILLER, initiated a civil action against plaintiff in the

28   Superior Court of California for the County of San Mateo, BARBARA MILLER, as

- 3 -

1   guardian of Molly Miller, an individual; and ANNE MILLER, an individual, Plaintiffs, v.

2   GREENSPRINGS BAPTIST CHRISTIAN FELLOWSHIP TRUST, a business entity of

3   unknown form; CARLETON L. BRIGGS, an individual; CHRISTINE DILLON, an

4   individual; DONALD BOHN, an individual; GRACE PARISH CHRISTIAN CHURCH,

5   a business entity of unknown form; and DOES 1 through 50, inclusive, Defendants, Case

6   No. CIV-465375.  The complaint was for damages for breach of contract-promissory

7   estoppel, conversion, fraud, for declaratory relief and for imposition of a constructive

8   trust.

9          12.  On or about September 13, 2007, defendants CILLEY, SCHMUCK and

10  TIMMERMAN, on information and belief with the permission of defendants BARBARA

11  MILLER, as guardian of Molly Miller, and ANNE MILLER, voluntarily dismissed

12  Carleton L. Briggs as a defendant in the above-referenced action.

13         13.  On or about September 17, 2007, the case was removed by GREENSPRINGS

14  to this Court, BARBARA MILLER, as guardian of Molly Miller, an individual; and

15  ANNE MILLER, an individual, Plaintiffs, v. GREENSPRINGS, et al., Defendants, Case

16  No. C 07-04776 JL.

17         14.  On October 31, 2007, GREENSPRINGS filed a motion to dismiss the

18  complaint pursuant to FRCP 12(b)(6) for failure to state a claim.  On March 24, 2008, the

19  complaint of BARBARA MILLER, as guardian of Molly Miller, and ANNE MILLER

20  was dismissed for failure to state a claim, as plaintiffs in that action could not show

21  damages, consideration, reliance, or other elements of an enforceable contract or fraud.

22  In sum, although the complaint alleged that defendants in the prior action Christine Dillon

23  and Donald Bohn had promised money to certain charities, plaintiffs had alleged no facts

24  which would give them any legal right to money, particularly from GREENSPRINGS.

25  The Court gave BARBARA MILLER, as guardian for Molly Miller, and ANNE

26  MILLER leave to amend their complaint, specifically ordering, in detail, how they had to

27  address and correct the above-noted defects.  A true and correct copy of the Order

28  (Document 48 in the prior action, Miller, et al. v. Greensprings, et al., Case No. C 07-

1   04776 JL) is attached hereto as Exhibit "A" and by reference made a part hereof.

2       15.  On March 28, 2008 defendants CILLEY, SCHMUCK and TIMMERMAN, as

3   counsel of record for the MILLERS, filed a first amended complaint against plaintiff in

4   this Court.  The first amended complaint was, again, for damages for breach of

5   contract-promissory estoppel, conversion, fraud, for declaratory relief, and for imposition

6   of a constructive trust, plus newly added claims for specific performance and for damages

7   for intentional interference with the right to inherit and negligent interference with the

8   right to inherit.  The first amended complaint added Carleton L. Briggs back in as a

9   defendant.  The first amended complaint also added new plaintiffs ROBERT MILLER

10  and BARBARA MILLER, individually, without leave of court.

11      16.  On April 17, 2008, GREENSPRINGS filed a motion to dismiss the first

12  amended complaint pursuant to FRCP 12(b)(6) for failure to state a claim and a motion

13  pursuant to FRCP 12(f) to strike the allegations adding new plaintiffs ROBERT MILLER

14  and BARBARA MILLER, individually.  On August 18, 2008, the Court dismissed the

15  first amended complaint with prejudice because BARBARA MILLER, as guardian of

16  Molly Miller, and ANNE MILLER had failed to address and correct the defects noted in

17  the Court's earlier order.  The Court also found that the addition of new plaintiffs

18  ROBERT MILLER and BARBARA MILLER, individually, was improper, that the

19  additional claim for specific performance lacked merit, and that the additional claims for

20  intentional and negligent interference with the right to inherit had no basis in law or in

21  fact.  A true and correct copy of the Order (Document 98 in the prior action, <u>Miller, et al.</u>

22  <u>v. Greensprings, et al.</u>, Case No. C 07-04776 JL) is attached hereto as Exhibit "B" and by

23  reference made a part hereof.

CLAIM

(Malicious Prosecution of Civil Action)

26      17.  The allegations contained in paragraphs 1-16 are incorporated by reference as

27  if fully set forth herein.

28  //

- 5 -

18. Defendants CILLEY, SCHMUCK and TIMMERMAN acted without probable cause in initially bringing the above-mentioned action against plaintiff because, as a matter of law, no reasonable attorney would regard as tenable the prosecution of the claims contained in the above-referenced complaint, and/or they unreasonably neglected to research the law in making the determination to proceed against plaintiff. In ruling on the motion to dismiss the complaint for failure to state a claim, the Court gave specific and detailed instructions as to the factual elements that would have to be alleged in order to properly state a claim for each cause of action contained in the complaint.

19. Defendants CILLEY, SCHMUCK and TIMMERMAN acted without probable cause in continuing to prosecute the above-mentioned action against plaintiff following the dismissal of the complaint because, as a matter of law, no reasonable attorney would regard as tenable the prosecution of the claims contained in the above-referenced first amended complaint, and/or they unreasonably neglected to research the law in making the determination to continue to prosecute plaintiff. Defendants CILLEY, SCHMUCK and TIMMERMAN ignored the instructions of the Court in drafting the first amended complaint, which also failed to state a claim upon which relief could be granted.

20. Defendants BARBARA MILLER, as guardian for Molly Miller, ANNE MILLER, CILLEY, SCHMUCK and TIMMERMAN acted without probable cause in bringing the above-mentioned action against plaintiff because the claims asserted against plaintiff in the complaint were false, and defendants BARBARA MILLER, as guardian for Molly Miller, ANNE MILLER, CILLEY, SCHMUCK and TIMMERMAN knew of their falsity at the time they determined to file the complaint against plaintiff, or defendants BARBARA MILLER, as guardian for Molly Miller, ANNE MILLER, CILLEY, SCHMUCK and TIMMERMAN unreasonably neglected to investigate the facts in making their determination to file the complaint against plaintiff.

21. All defendants acted without probable cause in continuing to prosecute the above-mentioned action against plaintiff following the dismissal of the complaint, because the claims asserted against plaintiff in the first amended complaint were false,

1  and defendants knew of their falsity at the time they determined to file the first amended

2  complaint against plaintiff, or defendants unreasonably neglected to investigate the facts

3  in making their determination to file the first amended complaint against plaintiff.

4      22. Defendants BARBARA MILLER, as guardian for Molly Miller, ANNE

5  MILLER, CILLEY, SCHMUCK and TIMMERMAN acted maliciously in bringing the

6  above-mentioned action against plaintiff because defendants BARBARA MILLER, as

7  guardian for Molly Miller, ANNE MILLER, CILLEY, SCHMUCK and TIMMERMAN

8  filed the complaint knowing that the claims asserted therein against plaintiff were false

9  and/or the proceedings were initiated for the purpose of depriving the plaintiff of the

10  beneficial use of its property and/or to destroy plaintiff by depriving it of its tax-exempt

11  status and/or the proceedings were initiated primarily because of hostility and ill will on

12  the part of defendants BARBARA MILLER, as guardian for Molly Miller, and ANNE

13  MILLER toward the plaintiff and/or the proceedings were initiated for the purpose of

14  coercing plaintiff into settling with BARBARA MILLER, as guardian for Molly Miller,

15  and ANNE MILLER, co-defendants in this action and plaintiffs in the prior action.

16      23. The malicious intent to coerce from the outset is evidenced by a letter from

17  ROBERT MILLER and BARBARA MILLER, on behalf of Molly Miller, to Christine

18  Dillon and Donald Bohn dated November 14, 2004, which was produced by BARBARA

19  MILLER, as guardian for Molly Miller, and ANNE MILLER in initial disclosures. In

20  that letter, ROBERT MILLER and BARBARA MILLER threatened an investigation of

21  Dillon's and Bohn's handling of Elsie Turchen's estate unless payment of $500,000 was

22  made as directed by ROBERT MILLER and BARBARA MILLER. A true and correct

23  copy of the threatening letter (Document 73 in the prior action, Miller, et al. v.

24  Greensprings, et al., Case No. C 07-04776 JL) is attached hereto as Exhibit "C" and by

25  reference made a part hereof.

26      24. All defendants acted maliciously in continuing to prosecute the above-

27  mentioned action against plaintiff following dismissal of the complaint, because

28  defendants filed and prosecuted the first amended complaint knowing that the claims

1    asserted therein against plaintiff were false and/or for the purpose of depriving the

2    plaintiff of the beneficial use of its property and/or to destroy plaintiff by depriving it of

3    its tax-exempt status and/or primarily because of hostility and ill will on the part of

4    defendants the MILLERS toward the plaintiff and/or for the purpose of coercing plaintiff

5    into settling with the MILLERS, co-defendants in this action and plaintiffs in the prior

6    action.

7         25.  As a proximate result of the institution of the above-mentioned action against

8    plaintiff and, following dismissal of the complaint, the prosecution of the first amended

9    complaint, plaintiff has been damaged.

10        26.  As a further proximate result of the action initiated by defendants BARBARA

11   MILLER, as guardian for Molly Miller, ANNE MILLER, CILLEY, SCHMUCK and

12   TIMMERMAN and, following dismissal of the complaint, prosecuted against plaintiff by

13   all defendants, plaintiff incurred attorneys' fees in defending against the action in excess

14   of $75,000.00.

15        27.  At all times herein mentioned, defendants knew that the claims they asserted

16   against plaintiff in the above-mentioned action were false, and/or defendants knew that

17   the claims they asserted against plaintiff were legally untenable.  Notwithstanding this

18   knowledge, defendants subjected plaintiff to cruel and unjust hardship in conscious

19   disregard of its rights, in that defendants CILLEY, SCHMUCK and TEMMERMAN

20   abetted and encouraged defendants BARBARA MILLER, as guardian for Molly Miller,

21   and ANNE MILLER to file fabricated and/or legally untenable claims against plaintiff,

22   and defendants BARBARA MILLER, as guardian for Molly Miller, and ANNE MILLER

23   filed such fabricated and/or legally untenable claims; and when their complaint was

24   dismissed, defendants CILLEY, SCHMUCK and TEMMERMAN then abetted and

25   encouraged defendants the MILLERS to file more fabricated and/or legally untenable

26   claims against plaintiff in the first amended complaint, and defendants the MILLERS

27   filed such fabricated and/or legally untenable claims, all to coerce plaintiff into settling so

28   that defendants could reap substantial profits.  These acts therefore justify the awarding of

COMPLAINT FOR DAMAGES
*Greensprings v. Miller, et al.*

1   punitive damages.

2

3       WHEREFORE, plaintiff prays judgment against defendants, and each of them, as

4   follows:

5       1. For attorneys' fees incurred to defend against the action in <u>Miller, et al. v.</u>

6   <u>Greensprings, et al.</u>, Case No. C 07-04776 JL, in excess of $75,000, according to proof;

7       2. For general damages according to proof;

8       3. For punitive damages;

9       4. For costs of suit herein incurred; and

10      5. For such other and further relief as the Court may deem proper.

11

12  Dated: March 6, 2009

13

14

15      CARLETON L. BRIGGS

16      Attorney for Plaintiff
        GREENSPRINGS BAPTIST CHRISTIAN
17      FELLOWSHIP TRUST

18

19

20

21

22

23

24

25

26

27

28

- 9 -

1

DEMAND FOR JURY TRIAL

2       The plaintiff in the above-entitled action requests a trial by jury as provided by

3   Amendment VII of the United States Constitution and by Rule 38 of the Federal Rules of

4   Civil Procedure.

5

6   Dated: March 6, 2009                    Respectfully submitted,

7

8

CARLETON L. BRIGGS

9

10  Attorney for Plaintiff
    GREENSPRINGS BAPTIST CHRISTIAN
11  FELLOWSHIP TRUST

12

13              CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

14      Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than

15  the named parties, there is no such interest to report.

16

17  Dated: March 6, 2009

18

19

CARLETON L. BRIGGS

20

21  Attorney for Plaintiff
    GREENSPRINGS BAPTIST CHRISTIAN
22  FELLOWSHIP TRUST

23

24

25

26

27

28

- 10 -

**EXHIBIT A**

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                       NORTHERN DISTRICT OF CALIFORNIA
10
11   Barbara Miller, et al.,                    No. C 07-4776  JL
12            Plaintiffs,                        ORDER GRANTING DEFENDANT
                                                GREENSPRINGS' AND DEFENDANT
13        v.                                     BOHN'S 12(b)(6) MOTIONS TO DISMISS
                                                WITH LEAVE TO AMEND, AND
14   Greensprings Baptist Christian Fellowship   DENYING WITHOUT PREJUDICE
     Trust,                                      12((b)(7) MOTION TO DISMISS FOR
15                                               FAILURE TO JOIN AN INDISPENSABLE
            Defendants.                          PARTY
16   _____/
                                                DOCKET # 7, 10
17
18                                **Introduction**
19        Defendant Donald Bohn's and Greensprings Baptist Christian Fellowship Trust's
20   motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7)
21   came on for hearing.  Carleton L. Briggs of Law Offices of Carleton L. Briggs and James
22   Rice, associated in as Counsel, appearing on behalf of Defendant Greensprings Baptist
23   Christian Fellowship Trust (Greensprings).  James H. Hartnett of Hartnett, Smith &
24   Associates appeared on behalf of defendant Donald Bohn.  James P. Cilley, Esq. appeared
25   on behalf of Plaintiff Barbara Miller.
26
27
28

1    IT IS HEREBY ORDERED that defendants' 12(b)(6) motion to dismiss for failure to

2  state a claim be granted with leave to amend.  Greenspring's 12(b)(7) motion is denied

3  without prejudice.

4                          **Procedural and Factual Background**

5    Elsie Turchen, now deceased, was Molly Miller's natural great grandmother.  Molly is

6  Robert and Barbara Miller's adopted daughter.  Robert and Barbara also have a natural

7  daughter, Anne.  Prior to her death, Elsie expressed in a November 23, 2000 letter what

8  Miller alleges to be Elsie's intent to give her house, located at 325 Malcomb Avenue

9  Belmont California, to Anne and Molly.  Elsie died December 10, 2000.

10    Following Elsie's death, defendant Christine Dillon represented to Miller that she was

11  the personal representative of the Estate of Elsie Turchen.  Miller alleges that Dillon knew

12  about Elsie's intended gift and that Dillon represented that Grace Parish Christian Church

13  would pay $500,000 to a charity or charities of Miller's choice on behalf of Anne and Molly.

14    In alleged reliance upon Dillon's representations, Miller did not make any claim

15  against the Estate.  Miller claims that the purpose of the payment was to prevent Miller

16  from bringing a claim against the Estate for Elsie Turchen's home on Malcomb Avenue.

17  Miller also claims that the purpose was to fulfill Elsie's intent to give a substantial gift to

18  Molly and Anne.  Miller does not explain or reconcile these different purposes.

19  Greensprings claims that Elsie Turchen had already given to it the property at 325

20  Malcomb Ave. and has submitted with its pleadings a photocopy of a grant deed which

21  shows that Elsie Turchen had given the property to Greensprings in January of 1999.

22    On August 11, 2002, defendant Donald Bohn issued two checks totaling $500,000 to

23  "First Hawaiian Title Company."  The checks were issued to a title company because

24  Miller's chosen charity, the Maui Preparatory Academy, was in the process of purchasing

25  real property for use as a school and the $500,000 was paid towards that purchase.  The

26  checks were drawn on an account owned by "Real Estate Trust," which Miller believes is a

27  "dba" for defendant Greensprings.

28    Apparently, First Hawaiian Title Co. did not exist and Miller asked Defendants to

reissue the check to First Hawaii Title Company.  Miller did not hear back from Defendants

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   for some time and subsequently demanded that a check for the full amount of $500,000 be

2   made out to Maui Preparatory Academy.  Miller received a $500,000 cashier's check on

3   January 10, 2005, made out to Maui Preparatory Academy.

4          On July 22, 2005, Miller requested that defendants Bohn and Dillon re-issue the

5   check as three separate checks totaling $500,000 to three new charities.  On August 10,

6   2005 Bohn allegedly told Miller the checks would be reissued the next day.  At the same

7   time, Miller wrote a letter to Attorney Briggs, who Miller believes is a member of the Board

8   of Greensprings.  The purpose was to explain why the three new checks were needed.

9   The next day, Briggs wrote back and asked that the January 10, 2005 cashier's check be

10   returned to Greensprings because of litigation against defendants Dillon, Bohn and

11   Greensprings by Penny Anderson.  Penny Anderson is Elsie Turchen's granddaughter and

12   Molly Miller's birth mother.  Briggs stated, by letter and later by phone, that in order to have

13   the checks re-issued, a motion in the *Anderson v. Greensprings* litigation had to be filed.

14   Miller returned the cashier's check to Briggs on August 16, 2005 in reliance on these

15   representations.  No other check has been issued to Miller.

16          Greensprings claims that as a result of the *Anderson* litigation, the $500,000 was

17   paid to the Estate.  Defendants provided a photocopied check made out to the

18   administrator of the Estate, Ramona Martinez, as proof of this.  This is the last payment for

19   $500,000 made by Greensprings.

20          Miller subsequently initiated this litigation, claiming Breach of Contract - Promissory

21   Estoppel, Conversion, Fraud, and seeking Declaratory Relief and the imposition of a

22   Constructive Trust as a result of defendants' actions and representations to Miller.  Miller

23   now seeks the $500,000 personally (on behalf of Molly and Anne).

24

25

26

27                                   **Legal Analysis**

28   **I.  Standard for Granting 12(b)(6) Motion to Dismiss for Failure to State a Claim**

United States District Court

For the Northern District of California

1    A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

2    12(b)(6) is viewed with disfavor and is rarely granted. *Gilligan v. Jamco. Develop. Corp.*

3    108 F.3d 246, 249 (9th Cir. 1997). In considering a motion to dismiss for failure to state a

4    claim, the district court must treat all plaintiff's allegations of material fact as true, and must

5    construe them in the light most favorable to the plaintiff. *Maduka v. Sunrise Hosp.*, 375

6    F.3d 909, 911 (9th Cir. 2004). However, the court is not required to accept legal

7    conclusions cast in the form of factual allegations if those conclusions cannot reasonably

8    be drawn from the facts alleged. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th

9    Cir. 2001). To survive a motion to dismiss, the complaint must only allege sufficient facts to

10   support a "claim for relief that is plausible on its face." *Bell Atlantic Corp v. Twombly,* 127

11   S.Ct. 1955, 1974 (2007).

12   Dismissals for failure to state a claim under FRCP 12(b)(6) should be without

13   prejudice to the plaintiff's ability to file an amended pleading. *Balistreri v. Pacifica Police*

14   *Dep't*, 901 F.2d 696, 701 (9th Cir 1988). A district court should grant leave to amend if it

15   appears at all possible that the plaintiff can correct the defect. *Id.* Indeed, the court should

16   grant leave to amend even if the plaintiff makes no request to amend the pleading, unless

17   the court determines that the pleading could not possibly be cured by the allegation of other

18   facts. *Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005). Amendment is futile only if no

19   set of facts can be proved under the amendment to the pleadings that would constitute a

20   valid and sufficient claim. *Miller v. Rykoff-Sexton Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

21   An order dismissing a complaint for failure to state a claim and giving the plaintiff

22   leave to amend is not a final appealable judgment. A plaintiff who chooses not to amend

23   must file a written notice of intent not to file an amended complaint. After this notice is filed,

24   the district court may enter an order dismissing the entire action, which order is then

25   appealable. *Lira v. Herrera*, 427 F3d 1164, 1169 (9th Cir. 2005); *Yourish v. Cal. Amplifier*,

26   191 F.3d 983, 992 (9th Cir. 1999).

27   **II. Greensprings' and Bohn's 12(b)(6) Motions**

28   Each of Miller's causes of action requires a showing of damages. Miller's claim that

she is entitled to the $500,000 is not supported by her complaint, which alleges an

1   agreement that the $500,000 be donated to a charity or charities of her choosing in the

2   names of her children, Molly and Anne.  If the money was to be given to charity under the

3   terms of the agreement, then it was not her money and she has not suffered damages in

4   the amount of $500,000.  Miller has not satisfied the element of damages for the causes of

5   action she brings in her complaint.  Consequently, all of Miller's causes of actions are

6   missing an essential element.  Defendants' motions to dismiss for failure to state a claim

7   upon which relief can be granted should therefore granted.  Miller is granted leave to

8   amend her complaint.

9        In so amending, Miller should address several points.  First, Miller must explain how

10  and why she was damaged in the amount of $500,000 if the alleged agreement with

11  defendants was for a gift of that amount to a charity or charities.  As pled, Miller has at

12  most stated facts sufficient to show damages only if her breach of contract claim was

13  based on a third-party donee beneficiary contract theory.

14       Second, Miller's breach of contract-promissory estoppel cause of action is deficient.

15  Miller has not alleged what, if any, claims she would have had against Greensprings as a

16  result of the decedent's gift of the house at Malcomb Ave to Greensprings.  She has not

17  alleged that the property was fraudulently obtained nor has she asserted any other basis

18  for a claim on the Estate or against the defendants.

19       Also, as alleged, there does not appear to have been an enforceable agreement

20  between the decedent and her great grandchildren for the gift of the house at 325 Malcomb

21  Avenue, Belmont, California.  Miller must explain how the decedent's apparent intent to

22  give a gift to Anne and Molly provides Miller with grounds to bring a claim against either

23  Greensprings or the Estate, or both.

24       Lastly, Miller may wish to further develop the factual record to explain: (1) why the

25  $500,000 went to the Estate or, the issues in the *Anderson v. Greensprings* litigation and

26  their relevance to this case; (2) how reliance on Defendants' representations was

27  reasonable, specifically, that reliance on Atty. Brigg's representations (on behalf of

28  Greensprings) was reasonable *even after* learning of the *Anderson v. Greensprings*

    litigation; (3) what obligations Miller has to any charities as a result of the agreement with

1   Defendants; (4) why the Estate is NOT an indispensable party **OR** why Defendants should

2   not be dropped from the lawsuit altogether if it is the Estate, and not the Defendants, that is

3   in possession of the $500,000; and (5) anything else Miller thinks is necessary to support or

4   explain the causes of action in her amended complaint.

5   **III.  Greensprings' 12(b)(7) motion**

6           Greensprings' 12(b)(7) motion to dismiss for failure to join an indispensable party

7   (the Estate of Elsie Turchen) could also be granted on the grounds that Miller has not

8   shown she was damaged.  Miller must first establish a right to the $500,000 dollars. If Miller

9   amends her complaint to show damages, then the 12(b)(7) motion could be addressed.

10                          **Conclusion and Order**

11          Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is

12  GRANTED WITH LEAVE TO AMEND.  The Court does not therefore reach Greensprings'

13  Rule 12(b)(7) motion, and denies it without prejudice.

14          IT IS SO ORDERED.

15  DATED: March 24,2008

16

17

18                                              _James Larson_

19                                        James Larson
                                          Chief Magistrate Judge

20

21

22

23  G:\JLALL\CHAMBERS\CASES\CIVIL\07-4776\12(b)(6),(7) order.wpd

24

25

26

27

28

United States District Court
For the Northern District of California

**EXHIBIT B**

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          NORTHERN DISTRICT OF CALIFORNIA

10

11   Barbara Miller, et al.,                        No. C 07-4776  JL

12              Plaintiffs,                    **ORDER OF DISMISSAL**
                                               **Granting Docket Numbers 28, 29, 52,**
13        v.                                   **55, 56, and 77; Denying without**
                                               **prejudice Docket No. 54**
14   Greensprings Baptist Christian Fellowship
     Trust,
15
                Defendants.
16   _____/

17                                 **Introduction**

18         Plaintiffs in their complaint sued for breach of contract, conversion, fraud,

19   declaratory relief, and promissory estoppel. The Court's jurisdiction derives from the

20   parties' diversity of citizenship, as provided by 28 U.S.C. §1332. The property from which

21   the dispute arises is located in this district. Plaintiffs are citizens of Hawaii and Defendants

22   are citizens of California and Oregon. The case was initially filed in San Mateo County

23   Superior Court and removed to this Court by Defendants pursuant to 28 U.S.C. §1441 and

24   1446.  All parties consented to the jurisdiction of this Court pursuant to 28 U.S. Code

25   §636(c) and Civil Local Rule 73.

26         The following motions came on for hearing:

27         1.      Defendants' motion to dismiss the first amended complaint for failure to state

28                 a claim pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) -

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   (Docket #s 28, 29, 56, 77 -Donald Bohn)(Docket # 52-Greensprings Baptist

2   Christian Fellowship Trust);

3   2.   Greensprings Baptist Christian Fellowship Trust's  Motion to Strike allegations

4   of First Amended Complaint (Docket # 55 )

5   3.   Greensprings Baptist Christian Fellowship Trust's motion to dismiss for failure

6   to join an indispensable party pursuant to FRCP 12(b)(7) (Docket # 54);

7   James P. Cilley, TEMMERMAN & CILLEY, LLP, appeared for Plaintiffs. Carleton L.

8   Briggs, LAW OFFICES OF CARLETON L. BRIGGS,  appeared for Defendant

9   Greensprings Baptist Fellowship Trust - James H. Hartnett, HARTNETT, SMITH &

10  ASSOCIATES, appeared for Defendant Donald Bohn. John B. Lytle appeared for

11  Defendant Carleton L. Briggs.

12                          **Factual Background**

13       Plaintiffs Robert Miller; Barbara Miller, individually and as guardian ad litem for

14  her adopted daughter Molly Miller; and Anne Miller, the natural daughter of Barbara and

15  Robert Miller, have sued to recover, or obtain a declaration that they are entitled to, the

16  sum of $500,000. The complaint, as amended, alleges claims for breach of contract-

17  promissory estoppel, conversion, fraud, declaratory relief, constructive trust, specific

18  performance, intentional interference with right to inherit, and negligent interference with

19  right to inherit. Plaintiffs' purported right to the $500,000 in question initially arose from an

20  alleged promise by the late Elsie G. Turchen (Molly Miller's natural great-grandmother)

21  to make a gift to Plaintiffs Molly and Anne. The $500,000 has been returned by

22  Greensprings to the Estate of Elsie G. Turchen.

23       Before her death, Elsie Turchen expressed in writing her intent to give a

24  substantial gift to Anne and Molly. In a letter to Barbara and Robert Miller dated

25  November 23, 2000, she asked the Millers if they would "consider" a gift to Anne and

26  Molly of a house located at 325 Malcolm [sic] Avenue, Belmont, California.

27       Elsie's November 23, 2000 letter, written to Barbara and Robert Miller,

28  stated, in pertinent part:

C-07-4776 DISMISSAL

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"I would like to do something for your girls. I do not shop; and I don't want to send things that have to be exchanged or are not useful, so I have failed to do anything on either Annie's or Molly's birthdays.

Would you consider the gift of the house for them? Enclosed is the picture. . . .

It will go vacant approximately 2/1/2001.

As you know, I am very ill. . . ."

(FAC at ¶ 37)

The first amended complaint alleges that it was Elsie's clear intent to give the Malcolm [sic] Avenue house to Anne and Molly, but Elsie died 17 days later, on December 10, 2000. Plaintiffs do not allege that the gift was completed. First Amended Complaint ("FAC"), ¶ 37.

After Elsie's death, defendant Christine Dillon, who had told Barbara Miller that she was the personal representative of Elsie's estate, said that Grace Parish Christian Church would pay $500,000 to a charity or charities of Barbara and Robert Miller's choice on Anne and Molly's behalf. The complaint alleges that defendant Dillon knew of Elsie's intended gift to Anne and Molly and proposed the charitable payment so that Anne and Molly would not make a claim against Elsie's estate. FAC, ¶ 38.

On August 11, 2002, two checks totaling $500,000 were issued to First Hawaiian Title Company. The checks were issued to a title company because the Millers' chosen charity, Maui Preparatory Academy, was in the process of buying real property for use as a school, and the $500,000 was to be used for that purchase. The two checks were drawn on an account owned by Real Estate Trust, which plaintiffs believe is a "dba" for defendant Greensprings. The checks were signed by defendant Bohn, and "were intended to be performance on the agreement by defendant Dillon (and now by Defendant Greensprings) to fulfill Elsie Turchin's [sic] promise to make a gift to Anne and Molly as indicated in Elsie's November 23, 2000 letter." FAC, ¶ 39.

1   Barbara and Robert Miller later learned that there was no entity named First

2   Hawaiian Title Company, and in an October 9, 2002 letter to defendants Bohn and Dillon,

3   they asked that the checks be reissued in the name of First Hawaii Title Corporation.

4   After not hearing from Bohn and Dillon for some considerable time, in January 2005

5   the Millers demanded that they reissue a check to Maui Preparatory Academy. On January

6   10, 2005, defendant Bohn delivered to the Millers a cashier's check for $500,000 made out

7   to Maui Preparatory Academy. The complaint alleges that the purpose of making the check

8   payable to Maui Preparatory Academy "was to make a gift to the Academy on behalf of

9   Anne and Molly." FAC, ¶¶ 39- 40.

10   Many months after receiving the cashier's check payable to Maui Preparatory

11   Academy, the Millers again asked defendants Bohn and Dillon to reissue the check, this

12   time as three checks totaling $500,000 payable to Stanford University, Seabury Hall, and

13   West Maui Carden Academy. In a telephone conversation on August 10, 2005, Defendant

14   Bohn told Barbara Miller that it would be done the next day. FAC, ¶ 42.

15   At the same time, Barbara Miller wrote a letter to Carleton L. Briggs, who plaintiffs

16   believe is a member of defendant Greensprings' board of directors, to explain

17   why the three checks were needed instead of one. The next day, Briggs wrote back to

18   Barbara Miller asking that the $500,000 cashier's check payable to Maui Preparatory

19   Academy be returned because of litigation against Greensprings, Bohn, and Dillon by

20   Penny D. Anderson, who is Elsie Turchen's granddaughter and Molly Miller's birth

21   mother. Briggs's letter said that a motion would have to be made in the "*Anderson v.*

22   *Greensprings*" litigation to have the checks reissued; that such a motion would be made

23   with all possible haste; and that the $500,000 would be maintained in a separate, interest-

24   bearing account earmarked for the three charities named by the Millers. Barbara Miller

25   returned the cashier's check on August 16, 2005, but no motion was ever made in the

26   *Anderson v. Dillon* litigation to reissue the three checks, and Plaintiffs allege that the

27   $500,000 was never put in a separate, interest-bearing account earmarked for the

28   charities. FAC, ¶¶ 43-44.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Disposition of the $500,000**

In August 2005, Barbara Miller returned the $500,000 cashier's check payable to

Maui Preparatory Academy to Greensprings' attorney, Carleton L. Briggs. Attorney Briggs

subsequently paid the $500,000 to the Estate of Elsie Turchen. FAC ¶ 44.

**Procedural Background**

This Court, on March 24, 2008, at Docket No. 48, granted Defendants' motions to

dismiss for failure to state a claim, pursuant to FRCP 12(b)(6), but also granted leave to

Plaintiffs to amend their complaint, ruling:

> "Each of Miller's causes of action requires a showing of damages. Miller's claim that she is entitled to the $500,000 is not supported by her complaint, which alleges an agreement that the $500,000 be donated to a charity or charities of her choosing in the names of her children, Molly and Anne. If the money was to be given to charity under the terms of the agreement, then it was not her money and she has not suffered damages in the amount of $500,000. Miller has not satisfied the element of damages for the causes of action she brings in her complaint. Consequently, all of Miller's causes of actions are missing an essential element. Defendants' motions to dismiss for failure to state a claim upon which relief can be granted should therefore granted. Miller is granted leave to amend her complaint."

(Order at 4:28-5:8; Docket No. 48, filed March 24, 2008)

The Court in its March 24 Order also addressed the issue of the Estate's possible

status as an indispensable party, although it did not rule on that question. The Court

expressly ordered Plaintiffs to amend their complaint thus:

> "In so amending, Miller should address several points. First, Miller must explain how and why she was damaged in the amount of $500,000 if the alleged agreement with defendants was for a gift of that amount to a charity or charities. As pled, Miller has at most stated facts sufficient to show damages only if her breach of contract claim was based on a third-party donee beneficiary contract theory.
>
> Second, Miller's breach of contract-promissory estoppel cause of action is deficient. Miller has not alleged what, if any, claims she would have had against Greensprings as a result of the decedent's gift of the house at Malcomb Ave to Greensprings. She has not alleged that the property was fraudulently obtained nor has she asserted any other basis for a claim on the Estate or against the defendants.
>
> Also, as alleged, there does not appear to have been an enforceable agreement between the decedent and her great grandchildren for the gift of the house at 325 Malcomb Avenue, Belmont, California. Miller must explain how the decedent's apparent intent to give a gift to Anne and Molly provides Miller with grounds to bring a claim against either Greensprings or the Estate, or both.

1   Lastly, Miller may wish to further develop the factual record to explain: (1) why the
    $500,000 went to the Estate or, the issues in the Anderson v. Greensprings litigation
2   and their relevance to this case; (2) how reliance on Defendants' representations
    was reasonable, specifically, that reliance on Atty. Brigg's representations (on behalf
3   of Greensprings) was reasonable even after learning of the Anderson v.
    Greensprings litigation; (3) what obligations Miller has to any charities as a result of
4   the agreement with Defendants; (4) why the Estate is NOT an indispensable party
    OR why Defendants should not be dropped from the lawsuit altogether if it is the
5   Estate, and not the Defendants, that is in possession of the $500,000; and (5)
    anything else Miller thinks is necessary to support or explain the causes of action in
6   her amended complaint."

7
    (Order at 5:9-6:4)
8
                                    **ANALYSIS**
9
        Plaintiffs fail to address adequately the issues raised in the Court's order and
10
    consequently fail to heal the fatal defects in their complaint.
11
        **1.      Motion to strike allegations of First Amended Complaint**
12
        **2.      Motion to dismiss for failure to state a claim pursuant to FRCP 12(b)(6)**
13
        The Court's Order to Plaintiffs granting them leave to amend their complaint does
14
    not contemplate the addition of new plaintiffs or claims, but merely some adequate basis for
15
    a finding of damages, of which there was none in the initial complaint. Plaintiffs try to add a
16
    new plaintiff, Robert Miller, along with new causes of action: for specific performance, for
17
    intentional interference with right to inherit, and for negligent interference with right to
18
    inherit. Plaintiffs Robert and Barbara Miller for the first time allege damage to themselves.
19
    They claim they pledged a $200,000 donation to Seabury Hall in reliance on their receipt of
20
    the $500,000 check from Greensprings. However, this allegation fails for a number of
21
    reasons, including that Seabury Hall is not pursuing them for the donation and that in fact
22
    the entity which committed to the donation is the Miller Family Foundation, a lapsed non-
23
    profit for which Plaintiffs have no responsibility.
24
                        **Addition of New Plaintiffs and Claims**
25
        In the parties' briefs or arguments or the Court's Order granting leave to amend,
26
    there was no discussion of the addition of new plaintiffs or claims. The Court's Order
27
    stated that the complaint failed to satisfy the essential element of damages in that,
28

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   according to the allegations, the purported gift of $500,000 was not to be given to any of

2   the Millers, but was to go to charity. Thus, neither Anne Miller nor Molly Miller, nor

3   Barbara Miller, as Molly's guardian ad litem, nor Robert Miller, the newly-added plaintiff,

4   would have received the money under the terms of the alleged agreement. They have not

5   suffered any damage, let alone damages of $500,000. There was no claim in the original

6   complaint on behalf of Robert Miller, Barbara Miller's husband, the father of Anne and

7   Molly.

8                              **Claim for Damages of $200,000**

9        The first amended complaint adds Barbara and Robert Miller as plaintiffs in their

10  individual capacities and alleges that, in reliance on the anticipated gift of $200,000 by

11  defendants to Seabury Hall, they personally pledged $200,000 to Seabury Hall. However,

12  the first amended complaint contains no allegation of a promise to pay money to or on

13  behalf of Barbara or Robert Miller individually. Moreover, this allegation does nothing to

14  cure the defect of the lack of damages for Anne and Molly Miller.

15       It appears from correspondence from Seabury Hall that the pledge on which

16  plaintiffs rely was regarded by Seabury Hall as a commitment not by Barbara and Robert

17  Miller individually, or by Anne and Molly Miller, but by the Miller Family Foundation, a

18  separate legal entity not a party to this action. (Exhibit J to Def. Request for Judicial Notice)

19  The Miller Family Foundation is a California corporation currently in suspended status, and

20  thus unable to have its rights asserted by anyone. It further appears from the Seabury Hall

21  letter that Barbara and Robert Miller face no personal liability if they fail to pay the pledge,

22  that any negative impact would be limited to the Miller Family Foundation's name being

23  removed from the list of donors on the school plaques. Arguably, this line of reasoning rests

24  on disputed material facts and would be more appropriate for resolution on summary

25  judgment, rather than a motion to dismiss. However, as discussed below, other factors

26  militate for dismissal, regardless of the outcome of this part of the dispute.

27       Even if they could make out a case for a legal obligation on the part of

28  Defendants to make the charitable gifts allegedly promised, the Miller's simply have no

standing to bring a claim on behalf of Seabury Hall or any of the other third-party charities

C-07-4776 DISMISSAL

United States District Court
For the Northern District of California

1  who they allege are the donee-beneficiaries of Defendants' alleged promises. The new

2  allegations do nothing to cure the defects that the Court previously directed Plaintiffs to

3  address.

4      Further, amendments naming new plaintiffs are permissible only if there is no

5  change in the claim being asserted. *Besig v. Dolphin Boating and Swimming Club*, 683

6  F.2d 1271, 1278 (9th Cir. 1982).   The addition of new plaintiffs with new claims does not

7  relate back to the date of filing the original complaint. The two-year statute of limitations on

8  the claim for breach of an oral contract ran on August 11, 2007, two years after plaintiffs

9  were told by Carleton L. Briggs that the checks to plaintiffs' latest choice of charities, which

10  allegedly had been promised unconditionally by defendant Bohn, would not be issued by

11  Greensprings without prior approval of the court in *Anderson v. Dillon*. FAC ¶ 43, 15:8-23.

12  The first amended complaint was not filed until March 28, 2008. Therefore any new claims

13  by new plaintiffs are time-barred.

14      Plaintiffs add two new claims to their complaint, for which they have failed to

15  establish the requisite elements, or even that such a claim is available, under existing law

16  (the negligent and intentional interference with right to inherit claims). Nor have they

17  alleged facts sufficient to support their old claims.

18      **Plaintiffs have failed to state the necessary elements for promissory estoppel.**

19      The required elements for promissory estoppel in California are . . . (1) a

20  promise clear and unambiguous in its terms; (2) reliance by the party to whom

21  the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the

22  party asserting the estoppel must be injured by his reliance. *Laks v. Coast Fed. Sav. &*

23  *Loan Assn.*, 60 Cal.App.3d 885, 890 (1976) (citing *Thomson v. Internat. Alliance of Stage*

24  *Employees,* 232 Cal.App.2d 446, 454 (1965)).

25      Plaintiffs have not met any of these requirements. Plaintiffs include (at FAC ¶ 43) a

26  partial transcript of a conversation between Carleton L. Briggs and Barbara Miller which

27  contradicts Plaintiffs' own assertions. Briggs told Barbara Miller that Christine Dillon and

28  Donald Bohn did not have authority to bind Greensprings without the approval of its board

   of directors. While Briggs believed he would be able to obtain the board's approval, he did

1    not have authority to bind Greensprings without that approval. In addition, Briggs clearly

2    told Barbara Miller that court approval in *Anderson v. Dillon* would also be required before

3    issuance of the checks she was requesting.

4        These conditions preclude the possibility that there was a promise clear and

5    unambiguous in its terms between Carleton L. Briggs and Barbara Miller, or between

6    Greensprings and Barbara Miller, to pay $500,000 to Plaintiffs or their designated charities.

7    Nor, to supply consideration, can Plaintiffs rely on the offer by Elsie Turchen to make a gift

8    to Anne and Molly Miller.  Plaintiff's reliance on such a promise is unreasonable, given

9    Brigg's statements to Barbara Miller.

10       A valid gift requires (1) intent to make an unconditional gift; (2) intent to make a

11   present, rather than a future gift; (3) an actual or symbolic delivery, that is that the donor

12   relinquish control of the property; and (4) that the donee accept the gift. *U.S. v. Alcaraz-*

13   *Garcia,* 79 F.3d 769 (9th Cir. 1996). At most, the letter from Elsie Turchen evidences an

14   intended gift that was not completed before her death and is therefore void.

15       **Plaintiffs' forbearance from initiating a claim against the Estate or an**

16       **investigation of Dillon and Bohn does not provide the requisite elements**

17       **to enforce the alleged contract.**

18       Plaintiffs allege that they refrained from filing a creditor's claim or making a claim

19   against the Estate of Elsie Turchen in reliance on Greensprings' alleged promise to pay

20   $500,000 to charities of their choice. Plaintiffs' Opp. to Motion to Dismiss, 9:15-19.

21       Plaintiffs Anne and Molly Miller (there is no allegation in the first amended complaint

22   of a promise to pay anything to or on behalf of Barbara and Robert Miller individually, or

23   their foundation) state that their reliance on alleged representations  by Donald Bohn on

24   July 22, 2005, and by Carleton L. Briggs on August 11, 2005, is the basis for their cause of

25   action for breach of contact, in that it created an estoppel as a result of their losing the

26   opportunity to pursue a claim against the Estate. Plaintiffs also cite their reliance on

27   promises by Defendant Christine Dillon as the basis for a claim for fraud, their damages

28   also arising from their forbearance to file a claim against the Turchen Estate.

United States District Court
For the Northern District of California

1    "Consideration may be forbearance to sue on a claim, extension of time, or any

2    other giving up of a legal right, in consideration of some promise." (1 Witkin, Summary of

3    Cal. Law (10th ed. 2005) Contracts, § 211, p. 246, italics added.) But where a duty is

4    imposed by law, "the promise to perform it is obviously not good consideration." ( Id., § 219,

5    p. 253.)

6            The offeree's consideration for the offeror's promise must actually be bargained for

7    in exchange for the promise. *Saks v. Charity Mission Baptist Church,* 90 Cal.App.4th 1116,

8    1135 (2001). This is the essence of a contract - a mutual bargain. With respect to

9    forbearance, it constitutes consideration only if the agreement or consent to forebear is

10   given in exchange for the offeror's promise. *Tiffany & Co. v. Spreckels*, 202 Cal. 778, 790

11   (1927) [forbearance to sue on a claim must be in pursuance of an agreement; if the party is

12   not bound to forbear and can institute suit at any time without breaching the parties'

13   bargain, mere forbearance is not consideration]; *Wine Packing Corp. v. Voss,* 37

14   Cal.App.2d 528, 538 (1940) [same].  In Elliott on Contracts, section 235, it is said: "If the

15   claim threatened to be enforced is invalid or worthless, a promise not to attempt to enforce

16   or to refrain from making trouble concerning it is not a consideration recognized by the law

17   as valuable." (cited in *City Street Imp. Co. v. Pearson,* 181 Cal. 640, 651 (1919); overruled

18   on other grounds at 63 Cal. 2d 584, 593 (1965).

19           Forbearance to pursue a claim that is wholly void cannot provide good consideration

20   to enforce another promise. *City Street Improvement Co., supra*; 1 Witkin, SUMMARY OF

21   CALIFORNIA LAW (10th ed. 2007) "Contracts" § 211, at 253. Plaintiffs have not addressed

22   this issue, other than now to assert without any support, and in spite of this Court's

23   direction, that the validity of Elsie Turchen's alleged gift is irrelevant. (Pltf Opp. To Def

24   12(b)(7) motion at 3:20-23, 4:11-12). However, Plaintiffs cannot escape the fact that

25   forbearance from initiating a claim in the Estate proceedings provides no "consideration" to

26   enforce the alleged promise by Defendants, because any claim of Plaintiffs against the

27   Estate was wholly void.

28

*Left margin:* United States District Court / For the Northern District of California

1    Furthermore, Defendant Greensprings contends that the November 14, 2004 letter

2  from Barbara and Robert Miller to defendants Christine Dillon and Donald Bohn (Exhibit I of

3  the Request for Judicial Notice to Def. 12(b)(6) motion) constituted a threat. The letter

4  stated that, if defendants Dillon and Bohn did not issue a check for $500,000 as plaintiffs

5  directed, "you will be forcing us to commence an investigation of your handling of Grandma

6  Teddy's estate." An agreement made under duress or threat is voidable. See REST.2D,

7  CONTRACTS § 175; 28 WILLISTON ON CONTRACTS (4th ed. 1990) § 71:8; *Marriage of*

8  *Gonzales*, 57 Cal.App.3d 736, 743 (1976).

9    Plaintiffs contend that this letter was not a threat but "merely an attempt to get the

10  Defendants to make the $500,000.00 checks out to the right payee." Plaintiff's

11  Opposition, 11: 26-27. Again, the question whether Plaintiffs' threatened Defendants might

12  best be resolved on summary judgment but the complete lack of consideration for

13  Defendants' promise makes duress or threat unnecessary as grounds for dismissal.

14    Neither can Plaintiffs credibly claim that any action by Defendants caused them to

15  miss the statute of limitations. When the gist of an action is fraud, regardless of the form,

16  the three-year period of limitation prescribed by Code of Civil Procedure § 338(d) applies,

17  and this limitation period applies in an action, based on fraud, to establish a constructive

18  trust. *Security First Nat'l Bank v. Ross*, 214 Cal.App.2d 424, 429-430 (1963). Plaintiffs

19  allege that Barbara Miller was defrauded into returning the $500,000 check in August of

20  2005, so the applicable limitation period has not yet run on this claim .

21    **Plaintiffs' argument concerning the contract's illegality misses the point.**

22    Greensprings argues that, because its payment of $500,000 to plaintiffs would

23  violate applicable tax laws, it would disqualify Greensprings as a tax-exempt organization.

24  Not only would the alleged contract be an act beyond the powers of Greensprings' trustee,

25  it would be illegal. Plaintiffs attempt to get around this by asking for specific performance,

26  i.e., payment directly to the designated charities. However, payment of another's pledge to

27  charity is not a charitable gift and is not eligible for the payor's gift tax charitable deduction.

28  The payment of that pledge is deemed to be a gift to the person who made the pledge.

Rev. Rul. 81-110, 1981-1 CB 479.

1    Plaintiffs allege that Greensprings promised to issue checks totaling $500,000, as

2    Plaintiffs directed, in the names of Anne and Molly Miller, including $200,000 to Seabury

3    Hall. Plaintiffs Barbara and Robert Miller argue that they relied on this promise when they

4    pledged $200,000 to Seabury Hall. Now they are suing to make Greensprings pay their

5    pledge. Plaintiffs do not dispute that this would be an *ultra vires* and illegal act, as it would

6    not be a legal and proper charitable gift by Greensprings. But Plaintiffs argue that the only

7    consequence of that illegality would be that Greensprings could lose its tax-exempt status

8    and be required to report and pay income tax. Plaintiffs argue that they are completely

9    innocent and that there would be no unjust enrichment to any party if the alleged contract is

10   enforced, but that their forfeiture of the $500,000 would be a "disproportionately harsh"

11   result to them. Plaintiffs' Opposition, 13:14-21.

12    Plaintiffs' "unjust enrichment" argument misses the key point: on the one hand, the

13   requested relief would not only cost Greensprings a second $500,000, in addition to the

14   $500,000 it paid the to estate of Elsie Turchen, but it would be contrary to Greensprings'

15   purposes, in excess of its trustee's powers, and would destroy Greensprings through the

16   loss of its tax-exempt status. On the other hand, Plaintiffs have shown no enforceable

17   entitlement to the $500,000 and, rather than suffer any forfeiture or harsh result, Plaintiffs

18   themselves will be no better or worse off, whether or not the requested charitable donations

19   are made.

20                    **Plaintiffs' breach of contract claim is time-barred.**

21    Code of Civil Procedure § 339 provides that an action on an oral contract must be

22   brought within two years. Plaintiffs' breach of contract claim is based on a series of

23   alleged oral representations that occurred between 2002 and 2005. The final acts in this

24   series occurred on August 10, 2005, when Donald Bohn allegedly agreed to issue new

25   checks totaling $500,000 the next day (FAC ¶ 42), and on August 11, 2005, when Carleton

26   L. Briggs requested the return of the $500,000 cashier's check that Greensprings had

27   issued to Maui Preparatory Academy, represented that a motion would be made in the

28   *Anderson v. Dillon* litigation for issuance of checks to the Millers' latest choice of charities,

     and stated that the $500,000 would be maintained in a separate, interest-bearing account.

*United States District Court*
*For the Northern District of California*

**United States District Court**
For the Northern District of California

1  FAC ¶ 44.

2       Plaintiffs' complaint in this action was filed on August 17, 2007, and their first

3  amended complaint was filed on March 28, 2008, each after the two-year statute of

4  limitations on breach of the alleged oral contract had run, on August 10, 2007.

5       Plaintiffs argue that a claim does not accrue until the breach occurs, and that their

6  claim for breach of the alleged oral contract did not accrue until August 15, 2007, at the

7  earliest, the date when the *Anderson v. Dillon* litigation was dismissed and therefore

8  Greensprings could no longer file a motion in the case. However, the breach, if any, must

9  have occurred on August 11, 2005, when Plaintiffs were told by Briggs that Greensprings

10  would not issue the checks they had requested, and as had been unconditionally promised

11  by Bohn on August 10, 2005, without prior approval of the court in *Anderson v. Dillon*. FAC

12  ¶ 43, 15:8-23. Their claim, if any, must be deemed to have accrued then for purposes of

13  the two-year statute of limitations.

14      **The amended complaint fails to establish the essential elements of conversion.**

15       To state a claim for conversion, plaintiffs must show ownership or right to

16  possession of the tangible property at the time of the alleged taking or interference with

17  the property. *Otworth v. Southern Pac. Transp. Co.*, 166 Cal.App.3d 452, 458 (1985); 5

18  Witkin, CALIFORNIA PROCEDURE (4th ed. 1997) "Pleading," § 660, at 116. Here,

19  however, none of the cashier's checks in question were ever made out to Plaintiffs. Their

20  inability to establish that they themselves were entitled to receive the sum of $500,000 is

21  fatal to the claim that Greensprings "converted" the money. Plaintiffs acknowledge that

22  Greensprings paid that specific, identifiable fund over to the Estate of Elsie Turchen.

23       Thus, their contention in opposition to the related motion under Rule 12(b)(7) that

24  the Estate is not even "necessary" to a full and fair resolution of this matter is difficult to

25  understand. At any rate, Plaintiffs have not stated a claim for conversion and, under the

26  facts they allege, cannot prevail.

27      **Plaintiffs cannot establish justifiable reliance or damages required for fraud.**

28       In its dismissal order, the Court specifically directed Plaintiffs to address "how

reliance upon Defendants' representations (on behalf of Greensprings) was reasonable

United States District Court
For the Northern District of California

1  even after learning of the *Anderson v. Greensprings* litigation." (Referring to *Anderson v*

2  *Dillon).* Reasonable or justifiable reliance is an essential element necessary to establish a

3  claim for fraud. 5 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2005) "Torts," § 772,

4  at 1121. Plaintiffs argue that they were "absolutely reasonable" in relying on the alleged

5  representations that Greensprings would pay the $500,000 as instructed because "if one

6  believes that his claim is going to be paid in full without any court intervention, it would be a

7  waste of time and money to prepare papers in order to enforce any claim in court."

8  Plaintiffs' Opp. 9:20-22.

9      This contention fails to address the Court's directive. It simply was not reasonable

10  for Plaintiffs to refrain from filing any kind of claim in the probate proceeding, when their

11  claim to the $500,000 was based on an intended testamentary gift (which they now allege

12  they had a right to inherit), or from intervening in the *Anderson v. Dillon* litigation, where

13  they knew the ownership of the separate, identifiable fund of $500,000 in the Greensprings

14  account was to be determined, whatever Greensprings might want. They failed to take the

15  necessary steps to protect their alleged interest.

16      The first amended complaint quotes at length the August 11, 2005 telephone

17  conversation between plaintiff Barbara Miller and Carleton L. Briggs. Briggs clearly

18  advised Barbara Miller that Donald Bohn and Christine Dillon had lacked authority to

19  issue the previous checks and that they had acted improperly without authorization from

20  Greensprings' board of directors. FAC ¶ 43, 14:22-15:3. Moreover, he expressly stated

21  that court authorization would be necessary before any other checks could be issued. FAC

22  ¶ 43, 15:8-23. Further, Greensprings' board of directors would have to ratify the acts of

23  Donald Bohn or Christine Dillon. FAC ¶ 43, 15:17-19. Thus, it was not reasonable for

24  Plaintiffs to interpret, and then to rely upon, these representations as an unconditional

25  "promise" to pay the charities, let alone the Plaintiffs, the $500,000 fund. Finally, as

26  previously discussed, Plaintiffs' failure to establish the requisite element of damages is also

27  fatal to their fraud claim.

28

**United States District Court**
For the Northern District of California

### The facts alleged do not warrant imposition of a constructive trust.

Plaintiffs ask the Court to impose a constructive trust on the grounds that Greensprings has wrongfully retained assets (specifically $500,000) which rightfully belong to Anne and Molly Miller. They argue that these assets are Anne and Molly Miller's by virtue of Greensprings' issuing checks in the names of the chosen charities as directed by the Millers as a substitute for Elsie Turchen's gift to them. Plaintiff's Opposition, 18:14-17.

Constructive trust is a remedy used by a court of equity to compel the transfer of property by one who has possesses it but is not justly entitled to it, to the person entitled to it. 13 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2005) "Trusts" § 319 at 892. Plaintiffs' argument that Greensprings has "retained" the $500,000, directly contradicts the allegation (at FAC ¶ 44) that Greensprings transferred the $500,000 to the Estate of Elsie Turchen. Greensprings doesn't have it, and so cannot be compelled to transfer it.

### Plaintiffs' rationale for specific performance is flawed.

Plaintiffs now ask the Court to grant "specific performance" under the rationale that "Defendants are directly responsible for the Plaintiffs' inability to file a claim in the probate proceeding or participate in the *Anderson v. Dillon* matter because of their false representations that the money would be paid." Plaintiffs' Opposition, 19:3-5. However, an agreement to perform an act which the party does not have the power lawfully to perform when required to do so cannot be specifically enforced. Civ. Code § 3390(3). A court will not lend its aid to give effect to a contract that is illegal, whether it violates the common law or a statute, either expressly or by implication. *Kremer v. Earl,* 91 Cal. 112, 117 (1891).

It is undisputed that, as Plaintiffs were advised by Briggs on August 11, 2005, the court in *Anderson v. Dillon* had jurisdiction over the $500,000 fund in dispute, so Greensprings had no lawful power to issue replacement checks as Bohn had promised on August 10, 2005. Further, as is described supra, the payment of a charitable pledge of another party by Greensprings, a 501(c)(3) organization, would violate applicable tax laws.

United States District Court
For the Northern District of California

1     Plaintiffs knew that the rights to the $500,000 was being determined in *Anderson v.*

2  *Dillon*, and they are responsible for their own decision not to participate in that litigation.

3  Plaintiffs Barbara and Robert Miller are also responsible for their unilateral decision to

4  make an unconditional pledge to Seabury Hall before the court in *Anderson v. Dillon* had

5  determined the fate of the fund they allegedly were relying on to pay it.

6     **Plaintiffs' interference-with-right-to-inherit claims are not founded in law or fact.**

7     Plaintiffs' first amended complaint includes new claims for intentional and

8  negligent "interference with right to inherit."

9     These claims cannot state a claim for relief because Plaintiffs had no right to inherit

10  from Elsie Turchen, whether by her will or by the laws of intestacy, and no such claims

11  have been recognized under California or Hawaii law. California Probate Code § 6451

12  provides that adoption severs the relationship of parent and child between an adopted

13  person and that person's natural parent. Plaintiffs allege that Elsie Turchen died intestate.

14  But if the Estate of Elsie Turchen were distributed under the laws of intestate succession,

15  neither Molly Miller, whose inheritance rights through her natural parents were severed by

16  her adoption, nor Anne Miller, who was no relation to Elsie Turchen, would have any right

17  to inherit from Elsie Turchen.

18     Plaintiffs claim that Elsie Turchen intended to give a gift to Molly and Anne Miller,

19  and she certainly may have. However, that gift was never completed before her death.

20  Her will (produced to plaintiffs in initial disclosure and attached as Exhibit K to the

21  Request for Judicial Notice in support of Defendants' motion to dismiss) does not provide

22  for the proposed gift. Since Anne or Molly Miller also have no right to inherit from Elsie

23  Turchen's Estate under the law of intestacy, there simply were no "rights to inherit" to be

24  interfered with by Defendants.

25     Furthermore, neither California nor Hawaii ever has recognized such claims. "The

26  second count suggested a theory—recognized in several states but not previously

27  validated in California—of intentional interference with an expected inheritance or gift."

28  *Hagen v. Hickenbottom*, 41 Cal.App.4th 168, 173 (1995). *Hagen* did not further address the

theory and certainly did not adopt it, and defendant Greensprings can find no Hawaii case

1 | or statute which addresses it. Thus, there is no basis in law for these claims.

2 | ### Conclusion re Motions to Strike and to Dismiss

3 | The facts alleged in Plaintiffs' first amended complaint show that they are not now,

4 | nor ever were, entitled to the claimed $500,000. They never received it as a gift, and if the

5 | promises alleged in the first amended complaint had been performed, the $500,000 would

6 | belong to a charity or charities, not to Plaintiffs. Plaintiffs do not allege that they are

7 | authorized to sue Defendants on behalf of any of the multiple sets of charities to which

8 | defendants allegedly promised to make gifts. On the facts alleged, Defendants have not

9 | damaged plaintiffs in the sum of $200,000, $500,000, or any amount. Even if all their

10 | allegations concerning Defendants are taken as true, Plaintiffs cannot prove any set of

11 | facts that would entitle them to relief. Accordingly, Greensprings' motion to strike and to

12 | dismiss Plaintiffs' First Amended Complaint is hereby granted without leave to amend.

13 | **3.    Motion by Greensprings Baptist Christian Fellowship Trust to dismiss**

14 | **for failure to join an indispensable party**

15 | Defendant Greensprings Baptist Christian Fellowship Trust moves the Court to

16 | dismiss this action on the ground that the Estate of Elsie Turchen is a party the joinder of

17 | which is indispensable to this action's just adjudication, and that the Estate has not been

18 | made a party to it.

19 | Because the Court grants the motion to strike the claims of the First Amended

20 | Complaint, and dismisses the complaint without leave to amend, the Court will not reach

21 | the issue of whether the Estate of Elsie Turchen is an indispensable party to this action.

22 | The motion to dismiss under FRCP 12(b)(7)(Docket No. 54) is therefore denied without

23 | prejudice.

24 | ### Summary, Conclusion, and Order

25 | As Elsie Turchen was dying she apparently wanted to do something for her great-

26 | granddaughters, Molly and Anne. Molly was her granddaughter Penny's child, who had

27 | been given up for adoption. Anne was the child of Molly's adoptive parents. Elsie said in

28 | her letter that she had been too busy to do much for the girls.  She wrote a letter to the

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    girls' parents, Robert and Barbara. Would the gift of a house be all right with them? She

2    had one in mind, and enclosed a photo. Two and a half weeks later, Elsie died.

3         What ensued was a complicated legal tangle. Penny, Molly's birth mother, contested

4    Elsie's will and sued in state court. The state lawsuit was settled.

5         Molly and Anne's parents did not join in the lawsuit or make a claim against Elsie's

6    estate. Greensprings was willing at first to make a donation to charities of their choice.

7    Over several years, checks were written and re-written, sent back, replaced, and finally

8    returned to the Estate. Molly and Anne's parents ultimately received nothing from either

9    Greensprings or Elsie's estate. They sued in this Court.

10        Plaintiffs claim two kinds of damages: forbearance to file a claim against Elsie's

11   estate, and their liability for a pledge to Seabury Hall of $200,000. They argue that they

12   gave up their opportunity to receive something from the Estate, in exchange for

13   Greensprings' promise to donate to charities on their behalf. They argue that they promised

14   a donation to Seabury Hall based on Greensprings' promise to them.

15        This Court concludes that none of this amounts to a cause of action. When Molly

16   was adopted, her legal ties to Elsie were severed. Even if the will, which left her nothing,

17   was invalidated, the law of intestate succession would also have given her nothing. Anne

18   and her parents had no legal connection to Elsie. Even if Elsie's proposal in the letter

19   amounted to a promise of a gift, the gift was never completed. The promise was not

20   enforceable. There was no valid claim on that basis available to Plaintiffs against Elsie's

21   estate. So the Plaintiffs' forbearance to file a claim against the Estate did not amount to

22   consideration for Greensprings' promise to donate on their behalf. Their forbearance was

23   worthless, since they had no viable claim against Elsie's estate. Their second claim, for

24   their liability for the pledge to Seabury Hall, was not based on any reasonable reliance on a

25   promise by Greensprings. The promise, if there was one, was to donate to charities,

26   including Seabury Hall, but not to Plaintiffs. Plaintiffs never had possession or a promise of

27   possession of any money.

28

C-07-4776 DISMISSAL

United States District Court
For the Northern District of California

1        Accordingly, Defendants' motions to strike and to dismiss pursuant to FRCP 12(b)(6)

2    are granted, Plaintiffs' First Amended Complaint is dismissed. The motion for failure to join

3    an indispensable party pursuant to FRCP 12(b)(7) is denied without prejudice. Plaintiffs

4    shall take nothing on their complaint. Parties to bear their own costs. The Clerk shall close

5    the file.

6        IT IS SO ORDERED.

7    DATED: August 18,  2008

8

9                              James Larson

10                            Chief Magistrate Judge

11

12

13   G:\JLALL\CHAMBERS\CASES\CIVIL\07-4776\Order Final no estate 28, 29, 52, 54, 55, 56, 77 .wpd

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C-07-4776 DISMISSAL

**EXHIBIT C**

November 14, 2004

Ms. Christine Dillon and
Mr. Don Bohn
Ward Anderson Realty
407 South B Street
San Mateo, Ca. 94401-4118

Dear Christine & Don:

We realize that it has been close to two years since our last contact. The reason
for that being that at the same time you sent the Agreement between MPA and the Grace
Parish Christian Church, the native Hawaiians sought and were successful in stopping
Peter Martin from subdividing the land the school would be purchasing. Subsequently,
we were back at Square One when the property owned by Maui Land & Pine became an
option again. This property consists of 14.9 acres and includes 7 huge buildings
including a large cafeteria. These buildings had been previously used as a Dorm Site for
the Pineapple Migrant Workers. This land has a view of the ocean as well as the West
Maui Mountains and since it was once a school long ago it has the feel of a School
Campus. To make a long story short, after long and tedious negotiations MPA was able
to secure this land for $100.00 due to the changing of the guard at ML&P. The new CEO
recognized the importance of a much needed school on the West Side and basically
donated the land to MPA. The bottom line now is the school has the property and now
needs to raise $4 million for the renovation of the existing buildings into first rate
classrooms.

You left us in quite an embarrassing position the last time by first issuing two
checks one in the amount of $497,000.00 and the other in the amount of $3,000.00
neither one of them originating from the Grace Parish Church. I can't begin to tell you
how happy the MPA school board was to receive that donation. That was until they
realized you had issued the checks to a non-existent Title Company rendering the checks
valueless. The embarrassment continued when we hired an attorney to work with Grace
Parish Church and a Mr. John Wyse as President of Grace Parish Church on the Land
Purchase Agreement you sent to MPA. Not only could the attorney not find any listing
of a Grace Parish Church nor could he find it's President, Mr. John Wyse. He informed
MPA that this was a non-existent entity, the details of which were very suspicious to say
the least. Such behavior would tend to suggest that you have something to hide and that
more importantly you are afraid of any inquiry that might result in discovery.

As you are well aware, this entire effort on our part is our attempt to provide a
decent education for our daughter and Elsie G. Turchin and Ward D. Anderson's
grandchild Molly without the added hardship of a three hour a day commute on a
dangerous road. This is what Teddy and Ward would have wanted for Molly and I have
the documentation to prove it. We can afford to pay the tuition but not build the school
ourselves. As Molly's education is dependent on the success of MPA as her only school
alternative we will ask both of you again for the last time to issue a check in the amount

of $500,000.00 payable to Maui Preparatory Academy c/o Molly Miller.(This time, however, without the embarrassment that went along with your previous attempts at trying to appear as having done something but in reality did not) This money represents the fair market value (according to the appraisal you told us you had done) of the home at 325 Malcolm, Belmont, Ca. that Teddy was about to give to Molly and Annie on her deathbed. This was also the verbal agreement that you had come to with us regarding this matter and that is why you issued the checks for $497,000.00 and $3,000.00 respectively to honor that agreement. You both know that this is the right thing to do but if you should decide not to you will be forcing us to commence an investigation of your handling of Grandma Teddy's estate if for no other reason than to find out the reason for your peculiar behavior and just what it is that you are trying to hide with respect to Grandma Teddy's along with Grandpa Ward's respective estates. This is the last thing that we want to embark on but we will because we believe that we owe it to Grandma to see that her last wish regarding this matter is fulfilled. We look forward to hearing from you. If you need us to provide any documentation other than what we are enclosing we will endeavor to do so and we look forward to hearing from you one way or the other no later than November 30, 2004.

Sincerely,


Bob & Barbara Miller
On behalf of Molly Miller