United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GREENSPRINGS BAPTIST CHRISTIAN ) Case No. 09-1054 SC
FELLOWSHIP TRUST, )
 ) ORDER DENYING DEFENDANTS'
 Plaintiff, ) SECOND MOTION TO STRIKE
 )
 v. )
 )
JAMES P. CILLEY, an individual; )
MARK A. SCHMUCK, an individual; )
and TEMMERMAN, CILLEY & KOHLMANN, )
LLP, )
 )
 Defendants. )
 )

## I. INTRODUCTION

This is a suit for malicious prosecution brought by Plaintiff Greensprings Baptist Christian Fellowship Trust ("Greensprings") against Defendants Robert Miller ("Bob"), Barbara Miller ("Barbara"), and Anne Miller ("Anne," and collectively, "the Millers"), as well as the Millers' former attorneys, Defendants James Cilley ("Cilley"), Mark Schmuck ("Schmuck"), and their firm, Temmerman, Cilley & Kohlmann, LLP ("TCK," and collectively, "Attorney Defendants"). ECF No. 1 ("Compl."). Greensprings has settled its dispute with the Millers and they have been dismissed from this action, leaving Attorney Defendants as the sole defendants. Now before the Court is Attorney Defendants' Renewed Special Motion to Strike the Second Amended Complaint. ECF No. 121

("Mot."). Greensprings filed an Opposition, ECF No. 122 ("Opp'n"), and Attorney Defendants filed a Reply, ECF No. 130 ("Reply"). For the following reasons, the Court DENIES Attorney Defendants' Motion.

## II. BACKGROUND

The history of this action spans more than eleven years and three civil actions. A detailed background is provided in the Court's July 28, 2009 Order granting Defendants' first Anti-SLAPP motion. See ECF No. 60 ("July 28, 2009 Order"). A brief synopsis follows below.

### A. Elsie Turchen's Offer

On November 23, 2000, Elsie Turchen ("Turchen") wrote a one-page letter to Bob and Barbara Miller, the adoptive parents of Turchen's biological great-granddaughter, Molly Miller ("Molly"). Id. at 3. Turchen offered the gift of a three-bedroom house in Belmont, California ("the Belmont house") for the benefit of Molly as well as Anne, Bob and Barbara's biological daughter. Id. at 3-4. Turchen noted that because she was "very ill," she needed to know soon if Bob and Barbara were interested. Id.

Before Bob or Barbara could accept this gift, Turchen died. Id. In an attempt to reach Turchen, Barbara was put in contact with Christine Dillon ("Dillon"), an employee of Ber Management ("Ber"), an entity that apparently assisted in management of Turchen's properties and Greensprings's properties. Id. Dillon told Barbara that Turchen did not own the Belmont house at the time she made the offer, but Dillon wanted to honor Turchen's gift by giving the Millers the equivalent amount of money. Id. Dillon

1 later informed Barbara that the house had been appraised for
2 approximately $500,000. Id. at 5.
3     Barbara and Bob decided that the money should go to the Maui
4 Preparatory Academy ("MPA"), which was planning to buy land near
5 the Millers' home in Maui. Id. In 2002, two checks totaling
6 $500,000 signed by Donald Bohn ("Bohn"), another employee of Ber,
7 were issued from "Real Estate Trust" to "First Hawaiian Title
8 Company." Id. The Millers then wrote to Bohn and Dillon,
9 explained that "First Hawaiian Title Company" did not exist, and
10 asked them to reissue the checks to "First Hawaii Title
11 Corporation." Id. Bohn and Dillon did not respond. Two years
12 later, on November 14, 2004, the Millers wrote Dillon and Bohn
13 reiterating their demand for a reissued check. Id. at 6-7. On
14 January 10, 2005, Bohn sent the Millers a cashier's check for
15 $500,000 made out to MPA. Id. at 6.
16     Barbara, however, no longer wanted the money to be given to
17 MPA. Id. Around this time, the Miller Family Foundation ("the
18 Foundation"), a non-profit entity run by Bob and Barbara, made a
19 $200,000 pledge to Seabury Hall, a college preparatory school in
20 Hawaii. Id. at 9. Barbara sent another letter to Dillon and Bohn
21 requesting that the check be reissued to Seabury Hall and two other
22 academic institutions. Id. at 7. Bohn referred Barbara to
23 attorney Carleton Briggs ("Briggs"), counsel for Greensprings. Id.
24     On August 11, 2005, Briggs sent Barbara a letter informing her
25 that he had been ordered to "assume direct control of all the
26 accounts and to suspend charitable donations or unapproved
27 expenditures" pending the disposition of a lawsuit brought by Penny
28 Anderson ("Anderson"), granddaughter of Turchen, against Dillon,

1  Greensprings, and others. Anderson v. Dillon, No. Civ. 445617 (San
2  Mateo Super. Ct., filed Mar. 18, 2005) ("Anderson"). Anderson
3  alleged in her complaint that Dillon, Bohn, Briggs, and
4  Greensprings were part of a conspiracy to defraud Turchen and her
5  heirs and assigns of more than $20 million in real property. Id.
6      Briggs requested that Barbara return the $500,000 check and
7  promised that it would be deposited with Greensprings in a separate
8  interest-bearing account pending the resolution of Anderson. July
9  28, 2009 Order at 8. Barbara returned the check. Id. However,
10 the was money paid into Turchen's estate as part of the settlement
11 in the Anderson suit, and was never submitted to the academic
12 institutions selected by Barbara and Bob. Id.

### B.   The *Miller* Action

14     The Millers engaged Attorney Defendants to determine if the
15 $500,000 could be recovered. On July 30, 2007, Cilley e-mailed the
16 Millers a seven-page letter in which he provided a factual summary
17 of the Millers' case and performed a legal evaluation of their
18 potential causes of action. Rice Decl. Ex. A ("July 30, 2007 Op.
19 Letter") at 3.[1] Cilley wrote that the Millers had no claim against
20 Turchen's estate, concluding that Turchen's letter was not
21 "enforceable as a contract, will, trust or other testamentary
22 document." Id. at 3. However, Cilley identified four potential
23 causes of action against Bohn, Dillon, Briggs, and Greensprings:
24 establishment of a constructive trust; breach of contract;
25 negligent misrepresentation; and declaratory relief. Id. at 4-6.
26 Cilley noted that "these causes of action may only be enforced by

---

[1] James E. Rice ("Rice"), counsel for Greensprings, filed a declaration in support of Greensprings' Opposition. ECF No. 123.

4

you on behalf of your daughters, not by you or your wife directly, as the underlying gift from Elsie [Turchen] was intended for them and not for you." Id. at 4.

The constructive trust cause of action was premised on the theory that Bohn sent the $500,000 check to the Millers in satisfaction of Turchen's intent to make a gift. Id. Cilley noted that a weakness of this claim was "case law that states that where a donor retained the right to stop payment on a check, delivery is not complete and no gift is made." Id. at 5. Under this law, because Briggs not only retained the right to stop payment, but demanded return of the check, there was no enforceable gift. Id.

The breach-of-contract claim was premised on the theory that a contract existed between Greensprings and the Millers whereby Greensprings promised to pay the Millers $500,000 in exchange for the Millers' forbearance of any claim against the estates of Turchen or her son, Ward Anderson. Id. at 6. Cilley noted that this cause of action was susceptible to an argument that no valid consideration existed, because none of the Millers had a valid claim against Turchen's or Ward Anderson's estate. Id. Cilley concluded that "it is unclear how a court would decide this issue." Id.

The negligent misrepresentation claim was premised on the theory that by not making a claim against Turchen's estate, the Millers reasonably relied on Dillon's promise to pay $500,000 to charities of their choosing. Id. Cilley identified two "concerns" with this cause of action -- the invalidity of the claim against Turchen's estate, and the one-year statute of limitations for claims against a decedent. Id. at 6-7. Cilley concluded by

5

stating that Attorney Defendants were "in the process of drafting a complaint against Greensprings." Id. at 7.

One week later, on August 8, 2007, Cilley e-mailed Bob a draft of the complaint. Robert Miller Decl. Ex. H ("Aug. 7, 2007 Letter").[2] Cilley wrote that "after reviewing the file and the underlying facts, it is my opinion that the Miller Family Charitable Foundation should not be a Plaintiff in this matter." Id. Cilley wrote that despite the fact that Bob and Barbara made financial commitments "based on the representations of the defendants," the fact that any promise made to pay the $500,000 was made "to (or on behalf of) your daughters, not to the Foundation" was "fatal to any causes that the Foundation may have against the defendants." Id. Cilley wrote that he would not include the Foundation as a plaintiff unless Bob instructed him otherwise. Id.

On August 17, 2007, Attorney Defendants filed a complaint on behalf of Barbara and Anne against Greensprings, Bohn, Dillon, and Briggs in state court, which the defendants subsequently removed. Miller v. Greensprings Baptist Christian Fellowship Trust, No. 07-4776 (N.D. Cal. Sept. 17, 2007) ("Miller"). In this initial complaint, Barbara and Anne alleged that Greensprings had breached a contract with the Millers, unlawfully converted the $500,000 in question, and committed fraud. July 28, 2009 Order at 8. The Millers requested that the $500,000 be paid to Anne and Molly personally, and they also requested punitive damages. Id. The Millers claimed that they had relied upon Dillon and Briggs' assurances, and that based on these assurances they had made no

---

[2] Robert Miller filed a declaration in support of Greensprings' Opposition. ECF No. 126.

6

claim against Turchen's estate and had returned the certified check to Greensprings. Id. at 8-9. Per Cilley's August 8, 2007 Letter, the Foundation was not named as a plaintiff. Id.

Magistrate Judge Larson dismissed the complaint with leave to amend. Id. at 9. The court found that the Millers had failed to make a showing of damages, because the $500,000 in question was to be donated to charities and not to be delivered to the Millers. The court also found that because Turchen's attempted gift was never accepted, Barbara and Anne had failed to explain how Turchen's attempted gift resulted in viable claims against either Greensprings or Turchen's estate. Id.

On March 28, 2008, Attorney Defendants filed a First Amended Complaint. Miller, ECF No. 49 ("Miller FAC"). The FAC added several allegations: that Dillon, Bohn, and Greensprings were part of a conspiracy to defraud Turchen; that Dillon assumed the name "Beth Anderson" and held herself out as Turchen's granddaughter; and that Greensprings agreed to pay the Millers $500,000 to avoid "increased scrutiny." Id. The FAC included a claim that the Millers had pledged $200,000 to Seabury Hall in reliance on assurances made by the Miller defendants. July 28, 2009 Order at 9. The Millers also added two new causes of action: intentional and negligent interference with the right to inherit. Id. Bob and Barbara were named as new plaintiffs, individually, and Briggs was named as a defendant. Id.

Briggs declares that upon reading the Miller FAC, he telephoned Schmuck, demanding to see communication from Seabury Hall commencing a collection action against Robert and Barbara on

7

their pledge.  Briggs Decl. ¶ 19.[3]  Briggs declares that in a later conversation with Cilley, Briggs pointed out that Seabury Hall apparently viewed the Millers' pledge as being from the Foundation, rather than from the Millers personally.  Id.  Briggs declares that Cilley responded that the Millers would merely amend the complaint again to add the Foundation as a plaintiff and "keep on amending" until Greensprings paid $200,000 to the Millers or gifted that amount in satisfaction of their pledge to Seabury Hall.  Id.

On August 7, 2008, Magistrate Judge Larson dismissed the FAC without leave to amend, finding many of the flaws present in the first complaint uncured in the FAC.  Miller, ECF No. 97 ("Miller Second Dismissal Order").  Specifically, the court found that Plaintiff's breach of contract claim was time-barred, the interference with the right to inherit claims were unrecognized by existing law, and that the Millers had alleged no cognizable damages.  Id.  The court found that the $200,000 pledge to Seabury Hall was made not by the Millers, but by the Foundation, a non-party entity currently in suspended status.  Id. at 9.

### C.  The Current Action

On March 10, 2009, Greensprings brought the present malicious prosecution suit against the Millers and Attorney Defendants.  ECF No. 1 ("Compl.").  Three days later, it filed its First Amended Complaint.  ECF No. 4 ("FAC").  In it, Greensprings alleged that the Attorney Defendants acted without probable cause in bringing the Miller action "because, as a matter of law, no reasonable attorney would regard as tenable the prosecution of the claims

---

[3] Briggs filed a declaration in support of Greensprings' Opposition.  ECF No. 128.

8

contained in the above-referenced complaint, and/or they unreasonably neglected to research the law in making the determination to proceed against plaintiff." Id. ¶¶ 18-19. Greensprings also alleged that Attorney Defendants acted maliciously because the complaint was filed with knowledge "that the claims asserted therein against plaintiff were false and/or the proceedings were initiated for the purpose of depriving the plaintiff of the beneficial use of its property and/or to destroy plaintiff by depriving it of its tax-exempt status and/or the proceedings were initiated primarily because of hostility and ill will on the part of [Barbara and Anne] and/or the proceedings were initiated for the purpose of coercing plaintiff into settling with [Barbara and Anne]." Id. ¶ 22. As evidence of malice, Greensprings attached a November 14, 2004 letter from Miller to Dillon and Bohn which it claimed "threatened an investigation of Dillon and Bohn's handling of Elsie Turchen's estate" unless $500,000 was paid as directed by Bob and Barbara. Id. ¶ 23.

The Millers and Attorney Defendants then separately filed special motions to strike the FAC under California's anti-SLAPP statute, Cal. Code. Civ. Proc. § 425.16. ECF Nos. 28, 38. On July 28, 2009, the Court granted Defendants' anti-SLAPP motions. See July 28, 2009 Order. The Court found that by bringing the Miller suit, Defendants were engaged in an act in furtherance of their right of petition, triggering the anti-SLAPP statute. Id. at 17. The Court found that Greensprings had failed to make the required minimal showing that the Miller suit was initiated with malice. Id. at 23. The Court found that the single piece of evidence cited by Greensprings -- the November 14, 2004 letter from Bob and

9

Barbara to Dillon and Bohn -- was "typical pre-litigation posturing" and not evidence of malice. Id. The Court concluded that while the arguments made in the Miller complaints were "objectively poor and therefore made without probable cause, there is no indication that they were made in bad faith." Id. at 25. The Court granted Greensprings leave to amend its complaint "if it believes it can make a successful showing of malice." Id. at 26.

Greensprings then filed a Second Amended Complaint -- having reached a settlement with the Millers, only the Attorney Defendants were named as defendants. ECF No. 63 ("SAC"). Greensprings attached to its SAC correspondence between Attorney Defendants and the Millers which it claims shows Attorney Defendants filed the Miller complaints with the knowledge that the claims asserted were invalid and for the improper purpose of extracting a settlement. Id. The SAC additionally alleged that portions of the Miller FAC -- in which Defendants allege Dillon, Bohn, Greensprings, and Briggs to be part of a "conspiracy" to defraud Turchen -- were taken from a superseded pleading in the Anderson action and stated without probable cause and with malice. Id. ¶¶ 35-36.

Attorney Defendants then appealed the Court's July 28, 2009 Order, arguing that the Court erred when it granted Greensprings leave to amend its complaint. ECF No. 64. Attorney Defendants also filed a second anti-SLAPP motion to strike. ECF No. 76. The Court sua sponte terminated the motions and stayed the case pending the outcome of Attorney Defendants' appeal. ECF No. 110.

In a published opinion, the Ninth Circuit found that it lacked jurisdiction over Attorney Defendants' appeal because the July 28, 2009 Order was neither a final decision on the merits nor an order

conclusively resolving "claims of right separable from, and collateral to, rights asserted in the action." <u>Greensprings Baptist Christian Fellowship Trust v. Cilley</u>, 629 F.3d 1064, 1070 (9th Cir. 2010).  In doing so, the Ninth Circuit did not reach the merits of Attorney Defendants' claim that the district court erred in giving Greensprings leave to amend.  Attorney Defendants subsequently renoticed their anti-SLAPP motion.

### III. LEGAL STANDARD

To determine whether to grant an anti-SLAPP motion brought under section 425.16 of California's Code of Civil Procedure, a court must undertake a two-step process.  First, the defendant filing the anti-SLAPP motion must show that the cause of action arises from "any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue . . . ." Cal. Civ. Proc. Code § 425.16(b)(1).  If the defendant meets this burden, then the burden shifts to the plaintiff non-movant to demonstrate a probability of prevailing on the merits.  <u>DuPont Merck Pharm. Co. v. Super. Ct.</u>, 78 Cal. App. 4th. 562, 567 (Ct. App. 2000).  "The plaintiff need only establish that his or her claim has 'minimal merit.'" <u>Soukup v. Law Offices of Herbert Hafif</u>, 39 Cal. 4th 260, 291 (2006) (citations omitted).  Evidence submitted by both parties may be considered, and although "the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support

11

for the claim." <u>Wilson v. Parker, Covert & Chidester</u>, 28 Cal. 4th 811, 821 (2002).  Evidence must be of the type admissible at trial, and averments made on information and belief will not suffice. <u>Salma v. Capon</u>, 161 Cal. App. 4th 1275, 1289 (Ct. App. 2008).

## IV. DISCUSSION

Greensprings concedes that Attorney Defendants' actions in litigating the <u>Miller</u> action were taken in furtherance of their right of petition.  <u>See</u> Opp'n.  Hence, to survive Attorney Defendants' anti-SLAPP motion, Greensprings must demonstrate its malicious prosecution claim has "minimal merit" such that there is a probability of prevailing on its merits.

To prevail on a malicious prosecution claim, a plaintiff must show that the prior action "(1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice."  <u>Soukup</u>, 39 Cal. 4th at 292. In its July 28, 2009 Order, the Court determined that the <u>Miller</u> action terminated in favor of Greensprings and that <u>Miller</u> was brought without probable cause.  July 29, 2009 Order at 18-22. Therefore, the only issue before the Court is whether Greensprings has made the required "minimal showing" of malice on the part of Attorney Defendants in litigating the <u>Miller</u> action.

"Evidence of malice is typically drawn from inferences and circumstantial evidence."  <u>Paulus v. Bob Lynch Ford, Inc.</u>, 139 Cal. App. 4th 659, 675 (Ct. App. 2006).  Malice "is not limited to actual hostility or ill will toward the plaintiff.  Rather, malice is present when proceedings are instituted primarily for an

12

improper purpose." <u>Sierra Club Foundation v. Graham</u>, 72 Cal. App. 4th 1135, 1157 (Ct. App. 1999). California courts have identified a number of examples of an "improper purpose":

> [T]he principal situations in which the civil proceedings are initiated for an improper purpose are those in which (1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim.

<u>Albertson v. Raboff</u>, 46 Cal. 2d 375, 383 (1953).

There is considerable case law in California on the question of what constitutes malice on the part of an attorney defendant. While "a lack of probable cause in the underlying action, by itself, is insufficient to show malice," <u>Daniels v. Robbins</u>, 182 Cal. App. 4th 204, 225 (Ct. App. 2010), "an attorney may be held liable for continuing to prosecute a lawsuit discovered to lack probable cause." <u>Zamos v. Stroud</u>, 32 Cal. 4th 958, 960 (2004). While negligence by an attorney defendant in failing to conduct adequate research prior to the filing of a complaint does not alone establish malice, <u>Grindle v. Lorbeer</u>, 196 Cal. App. 3d 1461, 1467-68 (Ct. App. 1987), "[i]f the prior action was not objectively tenable, the extent of a defendant's attorney's investigation and research may be relevant to the further question of whether or not the attorney acted with malice," <u>Daniels</u>, 182 Cal. App. 4th at 226.

In finding the lack-of-probable cause requirement to be satisfied in its July 28, 2009 Order, the Court found that "at least some of these claims lacked probable cause because the legal

13

theory asserted was wholly inapplicable."  See July 28, 2009 Order at 21.  Thus, if Greensprings can produce evidence that Attorney Defendants knew that legal theories underlying the Millers' claims were fatally flawed such that there was no possibility a court could find otherwise, they will have met their burden under the first prong of Albertson.

Whereas Greensprings's evidence in opposition to the first anti-SLAPP motion consisted of a single pre-litigation document, Greensprings's opposition to the current Motion is considerably more robust.  Having settled with the Millers, Greensprings submits declarations by Bob, Anne, and Barbara Miller -- attached to which is correspondence between the Millers and Attorney Defendants.  Included in this correspondence is the e-mail sent by Cilley to Bob on July 30, 2007 analyzing the potential claims available against Greensprings and other Miller defendants, see July 30, 2007 Op. Letter; the e-mail sent by Cilley to Bob on August 8, 2007 suggesting that the Miller Family Charitable Foundation had no causes of action against Greensprings and should not be named as a plaintiff, see Aug. 7, 2007 Letter; an October 17, 2007 e-mail from Schmuck to Barbara providing details of Attorney Defendants' informal investigation into the Miller defendants, Rice Decl. Ex. J ("Oct. 17, 2007 E-mail"); a February 26, 2008 intra-firm memorandum from Schmuck to Cilley evaluating Greensprings's motion to dismiss the SAC; Rice Decl. Ex. H ("Feb. 26, 2008 Memorandum"); an April 24, 2008 letter from Cilley to Bob and Barbara advising them on the strengths and weaknesses of the SAC, Barbara Miller Decl. Ex. K ("Apr. 24, 2008 Letter"); and a May 5, 2008 e-mail sent by Cilley to Greensprings's attorneys proposing to dismiss the case in

14

exchange for a $350,000 payment from Greensprings to the Miller Family Foundation, Rice Decl. Ex. C ("May 5, 2008 Settlement Offer"). Attorney Defendants do not challenge the authenticity of these exhibits.

Attorney Defendants argue that this Court held in its July 28, 2009 Order that proof of malice requires more than mere proof of lack of objective probable cause. Mot. at 17. Greensprings counters that the proof submitted shows not only that the initial complaint and FAC were drafted and filed without objective probable cause, but that Attorney Defendants knew they lacked probable cause when they drafted and filed them. Opp'n at 10.

Having reviewed the documents submitted in light of the relevant case law, the Court finds that Greensprings has introduced evidence that supports several inferences. The first is that Attorney Defendants did very little research into Greensprings and the other defendants before they filed the Miller initial complaint, and as a consequence, they knew very little about Greensprings and its relationship to Ber, Bohn, and Dillon when the initial complaint was filed. See Oct. 17, 2007 Letter. In the October 17, 2007 Letter, Schmuck reports to the Millers that Greensprings had offices in Santa Rosa, California, and Ashland, Oregon; that it was a 501(c)(3) contribution; that Briggs was its general counsel; that Bohn at one point had authority to write checks on behalf of Greensprings "until that authority was stopped by a preliminary injunction" in Anderson; and that according to pleadings in the Anderson action, Dillon has no connection with Greensprings. Id. If this is all Attorney Defendants knew about Greensprings months after the initial complaint was filed, this

15

lack of pre-filing research into Greensprings is relevant under Daniels to the question of malice.

A second and related inference is that Attorney Defendants knew that a court was likely to find many of the causes of action asserted in the initial complaint to be unsupported by probable cause. In the July 30, 2007 Opinion Letter, Cilley frankly discussed the problems with each cause of action later brought in the initial complaint -- chiefly that the Millers had no claim to Turchen's estate and that any promise by Dillon, Bohn, or Briggs to issue a $500,000 check to the charities of the Millers' choosing was not likely to be found to be supported by consideration or reasonable reliance. In Cilley's August 10, 2007 Letter, he makes clear his belief that the Foundation had no cause of action against Greensprings or the other Miller defendants, writing that the fact that any promise to pay $500,000 was made to the Millers on behalf of their daughters and not the Foundation was "fatal" to any claim by the Foundation. Id.

Were the story to end here, the decision whether to grant or deny Attorney Defendants' Motion would be difficult. Attorney Defendants cite Sangster v. Paetkau, 68 Cal. App. 4th 151, 164 (Ct. App. 1998) for the proposition that "litigants have the right to present issues that are arguably correct even if it is extremely unlikely that they will win." Attorney Defendants' actions -- while arguably unwise in hindsight -- could be seen as consonant with the attorney's duty to zealously represent the interests of his or her clients within the bounds of the law. California State Auto. Ass'n Inter-Ins. Bureau v. Bales, 221 Cal. App. 3d 227, 231 (Ct. App. 1990). There is a subtle difference between knowing that

16

a claim is not supported by probable cause and suspecting a court will find a claim to be unsupported by probable cause. The documents submitted by Greensprings clearly support the latter; whether they support the former is a closer question.

The story does not end here, however. If there were any doubts as to whether the Millers' causes of action were lacking in probable cause, Magistrate Judge Larson's order dismissing the initial complaint removed them. This order stated that the Millers must demonstrate that Anne and Molly were entitled to the $500,000 from Turchen, Turchen's estate, or the estate of Turchen's deceased son, Ward Anderson. Cilley believed that this order raised "<u>a hurdle which we cannot overcome</u>." Apr. 24, 2008 Letter at 3 (emphasis added). Cilley wrote that the challenges raised by Magistrate Judge Larson's order "cannot be overstated because it forms at least a part of the basis for most of our causes of action against the defendants in the First Amended Complaint." <u>Id.</u> Yet despite these considerations, the FAC was filed and ultimately dismissed with prejudice for failing to clear this hurdle. Because "an attorney may be held liable for continuing to prosecute a lawsuit discovered to lack probable cause," <u>Zamos</u>, 32 Cal. 4th at 960, this evidence is sufficient to satisfy Greensprings' burden on the issue of malice.

In addition, the FAC included new allegations that Greensprings was part of a "conspiracy" to defraud Turchen, and that Greensprings agreed to make a $500,000 donation to charities identified by the Millers to avoid "increased scrutiny." <u>See</u> <u>Miller</u> FAC. Given that no such conspiracy is discussed in the numerous litigation documents submitted to the Court, the

17

similarity between these allegations and allegations made in a superseded <u>Anderson</u> complaint, and Attorney Defendants' failure to submit documents tending to prove the existence of such a conspiracy, a reasonable fact finder could conclude they were lifted from the <u>Anderson</u> complaint and unsupported by probable cause. As such, this evidence is sufficient to show Attorney Defendants knew these allegations were not supported by probable cause when they made them.

Based on the above, Greensprings has put forward evidence supporting its allegation that Attorney Defendants brought claims against Greensprings that were unsupported by probable cause and legally untenable in light of the facts that were known by Attorney Defendants. This evidence is far from conclusive as to the ultimate issue of Attorney Defendants' liability for malicious prosecution, which is not yet before the Court. It is possible that a reasonable fact-finder could find Attorney Defendants were merely representing the Millers with the required zeal and without malice. However, Greensprings has conclusively cleared anti-SLAPP's "minimal merit" hurdle with this evidence. As such, the Court DENIES Attorney Defendants' Motion.

///
///
///
///
///
///
///
///

**V. CONCLUSION**

For the foregoing reasons, the Court DENIES the Motion to Strike brought by Defendants James Cilley, Mark Schmuck, and Temmerman, Cilley & Kohlmann, LLP.  A Status Conference is scheduled for June 24, 2011, at 10:00 a.m. in Courtroom 1, Seventeenth Floor, U.S. Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102.  Parties shall file an amended joint Case Management Statement by June 17, 2011.

IT IS SO ORDERED.

Dated: May 26, 2011

                                      UNITED STATES DISTRICT JUDGE